## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Susan L. Welo, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART DEFENDANT'S** |
| vs. | ) | **MOTION TO DISMISS** |
| | ) | |
| AdvisorNet Financial, Inc., | ) | Case No. 3:19-cv-00277 |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is Defendant AdvisorNet Financial, Inc.'s ("AdvisorNet") Motion to Dismiss filed on March 10, 2020.  Doc. No. 13.  AdvisorNet seeks to dismiss Plaintiff Susan L. Welo's Complaint pursuant to Federal Rule of Civil Procedure 12(c).  On March 31, 2020, Welo filed a response in opposition to AdvisorNet's motion.  Doc. No. 14.  AdvisorNet filed a reply on April 20, 2020.  Doc. No. 20.  For the reasons below, the motion is granted in part and denied in part.

## I.      BACKGROUND

From 1989 to 2016, Welo worked for a variety of firms as a licensed securities agent.  Id. ¶ 2. Under her business model, Welo traveled throughout North Dakota to assist investment clients while her office staff handled administrative tasks.  Id. ¶¶ 7, 8.

In February 2015, Cetera Advisor Networks LLC ("Cetera") hired Welo as a registered General Securities Representative.[1]  Id. ¶¶ 2, 7.  AdvisorNet was the transition team, which transferred Welo's files to Cetera.[2]  Id. ¶ 8.  Welo alleges that during this transition, AdvisorNet representatives instructed her staff to obtain blank signed client forms and place them into client files.  Id.  Welo further alleges these actions were taken without her knowledge or approval.  Id.

_____

[1] Prior to joining Cetera, Welo successfully completed a Financial Industry Regulatory Authority ("FINRA") examination.  Id. ¶ 7.
[2] Welo alleges that AdvisorNet is a separate and distinct entity from Cetera, sharing no common ownership or control.  Id. ¶ 3.

During Welo's employment with Cetera, AdvisorNet served as her Office of Supervisory Jurisdiction ("OSJ").  Id. ¶ 3.  As OSJ, AdvisorNet assumed responsibility to supervise Welo's advisors and administrative staff.  Id. ¶ 9.  To ensure Welo's advisors and staff conducted business properly, AdvisorNet had the duty to maintain an ongoing presence in her office.  Id. ¶ 10.  Specifically, AdvisorNet had the duty to review customer files and general office operations to ensure Welo's staff followed proper business practices.  Id.  AdvisorNet also had the duty to ensure Welo's advisors and administrative staff followed Cetera's internal policies, along with all federal, state, and Financial Industry Regulatory Authority ("FINRA") rules and regulations.  Id. ¶ 9.  For serving as OSJ, Cetera paid AdvisorNet a percentage of Welo's gross commissions.  Id.  Welo, a busy traveling securities representative at the time, relied on AdvisorNet to diligently and skillfully complete its supervisory and compliance duties.  Id. ¶ 10.  Welo claims that AdvisorNet neglected, and ultimately failed, in its supervisory and compliance duties over her office.  Id. ¶ 11.

In August 2016, Cetera's internal review of Welo's office revealed blank signed client forms in client files.  Id.  Cetera also discovered that, without Welo's knowledge or consent, one of her assistants allegedly signed Welo's name on customer account paperwork.  Id.  Cetera further learned Welo's office allegedly failed to comply with Cetera's data protection and communication policies. Id.  Welo claims any alleged failed compliance with Cetera's data protection and communication policies occurred "on AdvisorNet's watch."  Id.  The allegations "shocked" Welo because Cetera's internal review occurred within the time period covered by a previous clean AdvisorNet audit.[3]  Doc. No. 1-2, ¶ 13.

These results prompted Cetera to terminate Welo and file a U-5 form with FINRA, alleging violations of securities industry rules, regulations, and standards of conduct.  Id. ¶ 14.  According to Welo, the filing of the U-5 form is a "scarlet letter" for a securities representative and all but ensures

---

[3] Prior to August 2016, AdvisorNet conducted two clean audits of Welo's office.  Id. ¶ 13.

the representative will never work in the securities industry again.  Id.  Welo claims AdvisorNet was responsible for preventing these alleged violations.  Id.

After Cetera terminated Welo, she lost her entire book of business, which at that time was valued at $1,170,000.  Id. ¶¶ 15, 16.  Welo alleges AdvisorNet's compliance and supervisory failures destroyed her career and her primary source of income.  Id. ¶ 15.  Through FINRA arbitration, Welo and Cetera settled, on confidential terms, the disputes regarding Cetera's handling of her termination.  Id. ¶ 17.  AdvisorNet was not a party to the arbitration, settlement agreement, or release.  Id.

On November 15, 2019, Welo filed her Complaint in Cass County District Court.  Doc. No. 1-2.  Welo's complaint pleads four causes of action: (1) negligence, (2) breach of contract, (3) unjust enrichment, and (4) declaratory judgment.  AdvisorNet removed the case to federal court on December 16, 2019.  Doc. No. 1.  AdvisorNet then filed answer on January 15, 2020.  Doc. No. 5.

## II.   LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(c) establishes that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."  Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002) (citation omitted).  When presented with a motion for judgment on the pleadings, a district court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff, drawing all inferences in [her] favor."  Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006).  The standard for judgment on the pleadings is the same as that for failure to state a claim under Rule 12(b)(6).  Ashley Cnty. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.  A court must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (citation omitted).

When considering a motion for judgment on the pleadings under Rule 12(c), courts generally must ignore materials outside the pleadings, but they may consider "some materials that are part of the public record or do not contradict the complaint," as well as materials that are "necessarily embraced by the pleadings." Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).  "Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation and internal quotation marks omitted).

This action is based on diversity jurisdiction.  Therefore, the Court will apply North Dakota substantive law.  See Rose v. Midland Nat'l Life Ins. Co., 954 F.3d 1117, 1119 (8th Cir. 2020).

## III.   DISCUSSION

AdvisorNet makes four primary arguments in its motion to dismiss.  First, AdvisorNet argues that the Court should dismiss Welo's negligence claim because Welo failed to allege that AdvisorNet is a broker-dealer and owes a duty to Welo.  Second, AdvisorNet asserts that Welo's breach of contract claim should be dismissed because Welo failed to plead facts that establish a contract.  Third, AdvisorNet argues that the Court should dismiss Welo's unjust enrichment claim because Welo has an adequate remedy at law for the exact harm alleged because Welo filed and settled a previous

lawsuit with Cetera.  Lastly, AdvisorNet argues that each of Welo's claims should fail because Welo has not alleged facts that support the existence of an agency relationship between AdvisorNet and any individuals with an alleged supervisory duty.

As an initial matter, the Court notes that Welo filed the Affidavit of Susan Lavon Welo (Doc. No. 15) and the Affidavit of Brayden K. Harwood (Doc. No. 16), with Attached Exhibit A,[4] in support of her response brief.  Meanwhile, AdvisorNet attached a printout from the website BrokerCheck as Exhibit D to its reply.  Doc. No. 20-4, p. 2.  The Court has not considered the affidavits or its attachment in its analysis. For purposes of deciding this motion, the Court finds that the two affidavits and attachment are not embraced by the pleadings.  See Fernandez v. St. Louis Cty., No. 4:19-CV-01638-SNLJ, 2020 WL 2526557, at *1 (E.D. Mo. May 18, 2020) ("An affidavit is not a pleading.").

The analysis differs, however, for AdvisorNet's Exhibit D, a printout from the website BrokerCheck.  Courts outside of the Eighth Circuit have recognized BrokerCheck as a public record. See Buscetto v. Fin. Indus. Regulatory Auth., No. CIV.A. 11-6308 JAP, 2012 WL 1623874, at *3 (D.N.J. May 9, 2012) ("To carry out its statutory duties, FINRA established the CRD database and BrokerCheck, an internet resource that the public can use to obtain registration information about current and former representatives."); see also Duncan v. Vantage Corp., No. CV 18-288 (MN), 2019 WL 1349497, at *4 (D. Del. Mar. 26, 2019); Lobaito v. Fin. Indus. Regulatory Auth., Inc., No. 13 CIV. 6011 GBD HBP, 2014 WL 4470423, at *4 (S.D.N.Y. Sept. 9, 2014), aff'd sub nom. Lobaito, Jr. v. Fin. Indus. Regulatory Auth., Inc., 599 F. App'x 400 (2d Cir. 2015).  The Court finds this authority persuasive.  Accordingly, the Court concludes BrokerCheck is a public record and will consider the printout for the purpose of deciding this motion.  See Greenman, 787 F.3d at 887 (quoting Porous Media Corp., 186 F.3d at 1079).

---

[4] Exhibit A is a printout from AdvisorNet's website.  See Doc. No. 16-1.

A.      **Negligence**

Welo's first claim is a North Dakota negligence claim.  AdvisorNet argues it had no duty to supervise Welo because it is not a broker-dealer.  AdvisorNet alleges that because Welo cannot plead that AdvisorNet is a broker-dealer, Welo must plead some other facts that give rise to a duty to supervise, which she has not done.

Under North Dakota law, the elements of a negligence claim are "(1) duty; (2) breach of that duty; (3) causation and (4) damages."  Barbie v. Minko Constr., Inc., 2009 ND 99, ¶ 8, 766 N.W.2d 458.  "Generally, the existence of a duty is a preliminary question of law for the court to decide."  Id. The North Dakota Supreme Court has identified the factors for determining when a duty exists:

> (1) foreseeability of harm to plaintiff; (2) degree of certainty that plaintiff suffered injury; (3) closeness of connection between defendant's conduct and injury suffered; (4) moral blame attached to defendant's conduct; (5) policy of preventing future harm; (6) extent of burden to defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (7) availability, cost and prevalence of insurance for the risk involved.

Cichos v. Dakota Eye Inst., P.C., 2019 ND 234, ¶ 6, 933 N.W.2d 452 (citation omitted).  "If determining the existence of a duty depends on resolving factual issues, the facts must be resolved by the trier of fact."  Azure v. Belcourt Pub. Sch. Dist., 2004 ND 128, ¶ 9, 681 N.W.2d 816 (citation omitted).  "However, issues of fact may become issues of law for the court if reasonable persons could reach only one conclusion from the fact."  Id. (cleaned up).

Construing the Complaint in the light most favorable to Welo and drawing all reasonable inferences in her favor, the Court finds that Welo has not sufficiently pled that AdvisorNet is a broker-dealer.  For example, in her Complaint Welo alleges that "AdvisorNet served as the transition team" that transferred her files to Cetera.  Doc. No. 1-2, ¶ 8.  Welo further alleges that after the transition, AdvisorNet served as her OSJ while she was employed with Cetera.  Id. ¶¶ 3, 9.  Significantly, however, Welo never alleges that AdvisorNet is a broker-dealer in her Complaint.  Indeed, according to BrokerCheck and as a matter of public record, AdvisorNet is not a broker-dealer or FINRA

6

member.  The Court therefore rejects Welo's argument that AdvisorNet owed her a duty because of its alleged broker-dealer status.

Likewise, the Court finds that Welo has not sufficiently pled that AdvisorNet owed Welo a general duty of care separate and distinct from any potential contractual duty.  Rather, in her Complaint, the duty of care Welo alleges is duplicative of the duty she alleges in her contractual cause of action.[5]  Compare Doc. 1-2, ¶ 19, with id. ¶ 24.  Accordingly, Welo does not allege a plausible independent non-contractual duty.  See Bakke v. Magi-Touch Carpet One Floor & Home, Inc., 2018 ND 273, ¶ 10, 920 N.W.2d 726 ("Conduct which constitutes a breach of contract does not subject the actor to an action for negligence, unless the conduct also constitutes a breach of an independent duty that did not arise from the contract."); JKC Michaels LLC v. KTJ Ltd. P'ship Eighty-Four, No. 3:06-CV-54, 2010 WL 11497105, at *8 (D.N.D. Feb. 18, 2010) ("Under North Dakota law, a plaintiff must demonstrate breach of a non-contractual duty in order assert a negligence claim in addition to a breach of contract claim."); see also Farm Credit Servs. of Am., FLCA v. Haun, 734 F.3d 800, 805 (8th Cir. 2013).  Because Welo failed to properly plead that AdvisorNet owed her a duty, the negligence claim warrants dismissal.

**B.     Breach of Contract**

AdvisorNet next argues that the Court should dismiss Welo's breach of contract claim because she failed to properly plead the existence of a contract.  Specifically, AdvisorNet claims that Welo has not stated the origin of the parties' relationship, how AdvisorNet became the OSJ, who signed the agreement, what was the consideration for the agreement, when the agreement was signed, how

---

[5] In her negligence cause of action, Welo alleges "AdvisorNet has a duty of care to competently and diligently supervise and assure all advisors and administrative staff in Ms. Welo's office complied with all federal, state FINRA rules and regulations, and Cetera's internal policies."  Doc. 1-2, ¶ 19. In her breach of contract cause of action, Welo alleges "AdvisorNet entered into an agreement with Ms. Welo to serve as the OSJ for her office wherein AdvisorNet agreed to supervise and assure all advisors and administrative staff in Ms. Welo's office followed all federal, state, FINRA rules and regulations, and Cetera's internal policies."  Doc. 1-2, ¶ 24.

the agreement was breached and how Welo, as a registered representative for Cetera, was capable of contracting for a principal to supervise her work when that duty belongs to Cetera as a matter of law. Welo responds by arguing that she properly pleaded the existence of an oral contract.

To plausibly plead a claim for breach of contract, Welo must allege: (1) the existence of a contract; (2) breach of that contract; and (3) damages which flow from that breach.  Service Oil, Inc. v. Gjestvang, 2015 ND 77, ¶ 15, 861 N.W.2d 490.  For a contract to exist, there must be (1) parties capable of contracting; (2) consent of the parties; (3) a lawful object; and (4) sufficient consideration. N.D. Cent. Code § 9-01-02.  "The existence of an oral contract and the extent of its terms are questions of fact."  Lord & Stevens, Inc., 2008 ND 189, ¶ 12, 756 N.W.2d 789.

At this stage, Welo need only allege a plausible breach of contract claim.  The Court finds she has done so.  In her Complaint, Welo alleges AdvisorNet entered into an agreement with her to serve as the OSJ for her office.  Doc. No. 1-2, ¶ 24.  Welo further claims that Cetera paid AdvisorNet a percentage of Welo's gross commissions as consideration for its services as OSJ.  Id. ¶ 9.  Welo alleges AdvisorNet breached its obligations under the agreement by, among other things, failing to perform its contractual duties to supervise and assure all advisors and administrative staff in Welo's office followed Cetera's internal policies, along with all federal, state, and FINRA rules and regulations.  Id. ¶ 26.  Finally, she asserts that damages resulted from the breach.  Id. ¶ 27. Collectively, those allegations are sufficient to sustain Welo's breach of contract claim, and AdivsorNet's arguments to the contrary create a genuine dispute of material fact inappropriate for resolution on a Rule 12(c) motion.

## C.     Unjust Enrichment

AdvisorNet argues that the Court should dismiss Welo's unjust enrichment claim because North Dakota law prevents Welo from "taking advantage of the fact she chose not to bring suit against AdvisorNet when she sued Cetera, particularly since the prior lawsuit references AdvisorNet and

similarly alleges that AdvisorNet was her OSJ supervised through Cetera." Doc. No. 13-1, pp. 20-21. AdvisorNet further contends that the enrichment resulted from a third-party contract between AdvisorNet and Cetera, and that the Complaint fails to adequately plead a connection between AdvisorNet's enrichment and Welo's impoverishment. Welo counters that the unjust enrichment claim is pled as an alternative to her breach of contract claim.

> The North Dakota Supreme Court has explained:
>
> Unjust enrichment is a broad, equitable doctrine which rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another. To recover under a theory of unjust enrichment, the plaintiff must prove: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) the absence of a justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law. The theory may be invoked when a person has and retains money or benefits which in justice and equity belong to another. For a complainant to recover, it is sufficient if another has, without justification, obtained a benefit at the direct expense of the complainant, who then has no legal means of retrieving it. The essential element in recovering under the theory is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value.

McDougall v. AgCountry Farm Credit Servs., PCA, 2020 ND 6, ¶ 21, 937 N.W.2d 546. "Claims for relief may be sought under different or alternative theories. Although a party is generally not entitled to an equitable remedy if there is an adequate remedy at law, a party may seek relief and proceed on both types of claims and the legal claims will generally be resolved first." McColl Farms, LLC v. Pflaum, 2013 ND 169, ¶ 17, 837 N.W.2d 359 (citations omitted). "A contract implied in law or a claim of unjust enrichment is a fiction of law adopted to achieve justice where no true contract exists." Lord & Stevens, 2008 ND 189, ¶ 9, 756 N.W.2d 789 (citation omitted).

If Welo fails to prove her breach of contract claim, she may be left without an adequate remedy at law. In such a case, Welo would have the ability to pursue her unjust enrichment claim. Therefore, whether an oral contract exists is a threshold issue and a question of fact. See Lord & Stevens, 2008 ND 189, ¶ 12, 756 N.W.2d 789. The unjust enrichment claim is necessarily barred, however, to the extent Welo recovers on the breach of contract claim. See Ritter, Laber & Assocs., Inc. v. Koch Oil,

Inc., 2004 ND 117, ¶ 28, 680 N.W.2d 634 (citation omitted) (stating that "unjust enrichment applies only in the absence of a contract between the parties, and there can be no implied-in-law contract when there is an express contract between the parties relative to the same subject matter").

Additionally, while Welo engaged in FINRA arbitration with Cetera, they ultimately settled the matter on confidential terms and executed a settlement agreement and release.  Doc. No. 1-2, ¶ 17.  Whether there was any agreement between Welo and Cetera or AdvisorNet and Cetera that could somehow preclude Welo's equitable claim against AdvisorNet is a question of fact that the Court will not decide at this stage of litigation.

Turning to the claim itself, Welo alleges AdvisorNet benefited from and was enriched by receiving a percentage of her gross commission.  Id. ¶ 29.  Welo further claims she was impoverished by, among other things, AdvisorNet's failure to provide her with proper and necessary services.  Id. ¶ 30.  While AdvisorNet takes issue with the fact that Cetera—not Welo—paid AdvisorNet, the payment itself was a percentage of Welo's gross commissions.  See id. ¶ 8.  In these circumstances, the Court finds Welo's unjust enrichment claim is plausible.  Furthermore, judgment under Rule 12(c) is appropriate only if no material issue of fact remains.  The threshold issue of whether an oral contract exists is a question of fact, rendering judgment under Rule 12(c) inappropriate at this time.

### D.   Agency Relationship

AdvisorNet argues that Welo's "conclusory" use of the term "AdvisorNet's representatives" to support each cause of action is insufficient to establish an agency relationship.  Doc. No. 13-1, pp. 23-24.

As explained by the North Dakota Supreme Court:

An agency relationship is created when one person, called the principal, authorizes another, called the agent, to act for the principal in dealing with third persons.  Agency is either actual or ostensible.  An agency is actual when the agent really is employed by the principal.  An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him.  An apparent or ostensible agency must rest upon conduct or

communications of the principal which, reasonably interpreted, causes a third person to believe that the agent has authority to act for and on behalf of the principal.

Lagerquist v. Stergo, 2008 ND 138, ¶ 10, 752 N.W.2d 168, 172 (citations and quotation marks omitted).  "Agency is generally a question of fact."  Id. at ¶ 9.

Here, the Complaint alleges that AdvsiorNet and/or its representatives instructed Welo's staff to obtain blank signed client forms and place them into client files.  Doc. No. 1-2, ¶ 8.  Welo alleges these actions were taken without her knowledge or approval.  Id.  Additionally, without Welo's knowledge or consent, one of her assistants allegedly signed Welo's name on customer account paperwork.  Id. ¶ 11.  Welo claims any alleged failed compliance with Cetera's data protection and communication occurred "on AdvisorNet's watch."  Id.  Welo claims AdvisorNet was responsible for preventing these alleged violations.  Id. ¶ 14.  These allegations are sufficient to support a plausible agency relationship.

The Court finds that Welo has satisfied the pleading standard under Rule 12(c).  Whether Welo will ultimately be able to establish an agency relationship is a question of fact not amenable to resolution at the motion to dismiss stage.

### E.    Declaratory Judgment

AdvisorNet argues that if Welo's other causes of action are not plausible or fail as a matter of law, a declaratory judgment would be moot and result in an advisory opinion.  Because the Court is not dismissing the breach of contract and unjust enrichment causes of action at this time, there are still plausible causes of action which make the declaratory judgment claim viable.  Going forward, however, the Court will construe the claim under the Federal Declaratory Judgment Act, not the North Dakota Declaratory Judgment Act.  See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 416 (1996) (explaining that "federal courts sitting in diversity apply state substantive law and federal

procedural law"); <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671 (1950) (citation omitted) ("The operation of the [Federal] Declaratory Judgment Act is procedural only.").

## IV.   <u>CONCLUSION</u>

The Court has reviewed the record, the parties' filings, and the relevant legal authority.  For the reasons above, AdvisorNet's motion to dismiss (Doc. No. 13) is **GRANTED IN PART** and **DENIED IN PART**.  Welo's negligence claim is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

Dated this 6th day of October, 2020.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court